UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CASE NO. 21-cr-00207-01 |
| VERSUS | JUDGE ELIZABETH E. FOOTE |
| ERIC LAMAR WIMBLEY (01) | MAGISTRATE JUDGE HORNSBY |

**REPORT AND RECOMMENDATION**

**Introduction**

Eric Lamar Wimbley ("Defendant") is charged with one count of possession of cocaine with intent to distribute, one count of possession of a firearm in furtherance of drug trafficking, and one count of possession of a firearm by a felon. The charges arose out of a search of Defendant's vehicle. Before the court is Defendant's Motion to Suppress (Doc. 27). Defendant argues that the evidence seized as a result of the stop and search should be suppressed because there was no probable cause for the search of the vehicle. For the reasons that follow, it is recommended that the motion be denied.

**Relevant Facts**

A hearing was held on the motion to suppress. The following facts were established. Deputy John Berry and fellow agents with the narcotics division of the Caddo Parish Sheriff's Office ("CPSO") were investigating Defendant based on a tip from an informant that Defendant was selling narcotics in the Allendale neighborhood in Shreveport. Tr. 8-9. In March and April 2021, Deputy Berry and CPSO agents used an informant to conduct a series of controlled buys of crack cocaine from Defendant at two residences in the

Allendale neighborhood. Defendant sold the crack cocaine while sitting in a Cadillac parked at the properties. Tr. 46. Based on those buys, Deputy Berry applied for and received search warrants for the residences. Tr. 11-14.

Further investigation revealed that Defendant did not live at the two Allendale residences but only used the residences to sell narcotics. The CPSO agents planned to execute the search warrants only if Defendant was at one of the residences. Tr. 36. The deputies conducted surveillance on the residences on April 12, 2021, but Defendant did not go to either of the residences on that date. Tr. 35. Deputy Berry testified that executing the warrants without Defendant being present would have been "null and void." Tr. 15.

While this investigation was taking place, Defendant was on parole for narcotics-related charges. Tr. 55. Prior to being released from prison, Defendant signed a "Diminution of Sentence" document. Condition No. 9 of the Diminution of Sentence stated that Defendant agreed to searches of his residence or vehicle when reasonable suspicion exists that he is engaged in criminal activity. Tr. 49-50. Defendant also signed a form indicating that he owned a gray Cadillac XTS 2016. Tr. 54.

Sometime in April 2021, Officer Shari Cone with the Louisiana Probation and Parole Department ("P&P") was operating the anonymous tip line for the P&P office when she received an anonymous phone call that Defendant was selling drugs in the Allendale area of Shreveport and was conducting the sales in a gray Cadillac. Tr. 54-55. Officer Cone brought this information to the attention of Kathryn Gipa-Reedy, Defendant's parole specialist. Officer Cone contacted CPSO agents with this information on April 13, 2021. Tr. 15.

Based on the conversation with Ms. Cone, the CPSO agents met with members of P&P and conducted a joint operation to discuss Defendant's criminal activity and formulate a plan to find Defendant. Tr. 15-16. As part of the operation, surveillance units canvassed the Allendale area and located Defendant at 2904 Looney Street. Tr. 37-38.

The CPSO agents and P&P officers went to the Looney Street address. Deputy Berry rode in the rear driver's side seat of a patrol car driven by Agent Ashcroft. Agent Harris was also in the patrol car. Tr. 20. A silver Cadillac XTS[1] was parked on the road at the end of the driveway, and a Jeep SUV was parked in the driveway. Tr. 17-18. Defendant was standing at the driver's side door of the Jeep talking to the driver, Timothy Welch. Tr. 20. Agent Ashcroft pulled his patrol vehicle between the Cadillac and the Jeep in order to arrest Defendant and Welch. When Deputy Berry began to get out of the rear driver's side of the patrol car, Welch reversed his Jeep, turning it toward the side of the car Berry was exiting. Berry hopped back into the vehicle to avoid being hit. Welch hit the patrol car, peeling the rear driver's side door back, then continued going down the block in reverse. Tr. 20-21.

Berry exited the patrol car and followed Welch down the block on foot. He gave loud verbal commands for Welch to stop, but Welch continued down the block. Berry radioed for K9 vehicles that were coming from the other end of the block to tell them what happened. The K9 officers were able to apprehend Welch. Tr. 21.

---

[1] Trooper Berry described the Cadillac as "silver" in his testimony, but other documents refer to the car as "gray."

Meanwhile, Agent Harris apprehended Defendant and placed him in handcuffs. Tr. 42. Defendant was read his Miranda rights, and he indicated that he understood those rights. Tr. 22-23. Defendant said that he did not know anything about the Cadillac. P&P agents patted down Defendant and found a key fob and key belonging to the Cadillac and $3,000 in cash on his person. Tr. 23, 41.

P&P agents used the key fob to open the Cadillac and initiated a search of the vehicle. They informed Deputy Berry that they found a large amount of narcotics in the vehicle, so Berry took over the search. Tr. 24. A Dillard's bag was located on the floorboard in the rear passenger's side of the vehicle. Inside the bag were packaging material, a large amount of marijuana packed in small bags, digital scales, and a handgun. Tr. 25-26. A small red velvet bag containing methamphetamine and crack cocaine was found in the front driver's seat. Tr. 26. Also found in the car where razor blades with cocaine residue, three cell phones, cash, and more packaging material. Tr. 32. Defendant's name was on a dry cleaner receipt found in the vehicle, and his driver's license was in a wallet found in the vehicle. Tr. 27-28.

**Law and Analysis**

It is well settled that parolees and probationers "do not enjoy the absolute liberty to which every citizen is entitled, but only ... conditional liberty properly dependent on observance of special restrictions." Griffin v. Wisconsin, 483 U.S. 868, 874 (1987). On the continuum of state-imposed punishments, "parolees have fewer expectations of privacy than probationers, because parole is more akin to imprisonment than probation is to imprisonment." Samson v. California, 547 U.S. 843, 850 (2006).

The Supreme Court has held that a warrantless non-consensual search of a probationer on the basis of reasonable suspicion does not violate the Fourth Amendment. Id. (upholding a warrantless non-consensual search of a probationer's home on less than probable cause when a state regulation authorized warrantless searches by probation officers upon reasonable suspicion); see also United States v. Knights, 534 U.S. 112, (2001) (upholding a warrantless non-consensual search of a probationer's home based on reasonable suspicion when the probationer agreed to searches as a condition of probation); United States v. Keith, 375 F.3d 346, 347 (5th Cir.2004) (upholding a warrantless, non-consensual search of a probationer's home based on reasonable suspicion when neither a state regulation nor a condition of probation specifically authorized the search). See also Carter v. St. John Baptist Par. Sheriff's Office, 2011 WL 6140861, at *5 (E.D. La. 2011).

There was, at a minimum, reasonable suspicion to search Defendant's vehicle. "[R]easonable suspicion requires no more than that the authority acting be able to point to specific and articulable facts that, taken together with rational inferences from those facts, reasonably warrant a belief in the conclusion … that a condition of parole has been or is being violated." United States v. Scott, 678 F.2d 32, 35 (5th Cir. 1982), citing Terry v. Ohio, 392 U.S. 1 (1968). "Reasonable suspicion is a low threshold, requiring that an official have 'some minimal level of objective justification.'" United States v. Castillo, 804 F.3d 361, 367 (5th Cir. 2015). Actions taken by an officer based on a reasonable suspicion are permissible even if the officer has made a good faith mistake of fact or law. Heien v. North Carolina, 135 S. Ct. 530, 539 (2014).

Ms. Gipa-Reedy, Defendant's parole specialist, knew that her office had received an anonymous tip that Defendant was selling drugs. Tr. 65. The tip indicated that Defendant was selling drugs out of a gray Cadillac. Ms. Gipa-Reedy knew that Defendant drove a gray Cadillac based on his paperwork with her office, and she knew that he had prior convictions for drug-related charges. Tr. 54, 55. Based on the anonymous tip, Ms. Cone with P&P contacted the CPSO. During a meeting with CPSO agents, Gipa-Reedy learned that officers had conducted controlled buys of crack cocaine from Defendant. Tr. 65. Based on that knowledge, Gipa-Reedy had, at minimum, reasonable suspicion to conduct a search in accordance with the Diminution of Sentence agreement signed by Defendant.

Defendant does not appear to dispute the assertion that reasonable suspicion existed for the search. Rather, Defendant argues, that "the joint operation to find, apprehend, and search [Defendant] and the vehicle he was driving was … a subterfuge for a police investigation which lacked an arrest warrant for [Defendant] or a search warrant for his car. Defendant cites Louisiana courts of appeal cases for the contention that a parole officer may not use his authority as a subterfuge to help another police agency that desires to conduct a search but lacks probable cause.

Defendant's argument does not have merit. The deputies had probable cause to conduct a search, as evidenced by the two residential search warrants they had already received. The probable cause was supported by the three controlled buys in which a confidential informant bought crack cocaine from Defendant, who made the sales from his car. Tr. 11, 13-14, 46. Furthermore, it was Ms. Cone with P&P who initiated contact with

the deputies after receiving an anonymous tip that Defendant was selling narcotics. This sequence of events does not support Defendant's theory that the joint operation between the deputies and P&P was "instigated and conducted" by the deputies.

Accordingly,

It is recommended that Defendant's Motion to Suppress (Doc. 27) be denied.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Crim. P. 59(b)(2), parties aggrieved by this recommendation have **fourteen (14) days** from the date of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Crim. P. 45(b). A party may respond to another party's objections within **fourteen (14) days** from the filing of the objections. Counsel are directed to furnish a paper copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file timely written objections to the proposed findings, conclusions and recommendation set forth above shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 5th day of August, 2022.

Mark L. Hornsby
U.S. Magistrate Judge